**RICHARDSON ENGINEERING
COMPANY**

v.

**INTERNATIONAL BUSINESS
MACHINES CORPORATION.**

Civ. A. No. 81–91.

United States District Court,
D. Vermont.

Nov. 24, 1981.

Martin K. Miller, Samuelson, Portnow, Miller & Eggleston, Burlington, Vt. and Fred I. Parker and William B. Miller, Jr., Langrock, Sperry, Parker & Stahl, Middlebury, Vt., for plaintiff.

Matthew I. Katz, Latham, Eastman, Schweyer & Tetzlaff, Burlington, Vt., for defendant.

## OPINION AND ORDER

COFFRIN, District Judge.

Plaintiff Richardson Engineering Company (Richardson), a New Jersey corporation, has filed a seven count complaint against defendant International Business Machines Corporation (IBM), a New York corporation. The William L. Crow Construction Company (Crow) contracted with defendant to construct a manufacturing building in Essex Junction, Vermont. Under a 9.2 million dollar subcontract with Crow, plaintiff agreed to perform plumbing, heating, and other piping work in this building. Plaintiff alleges that, although it performed its work diligently and in a workmanlike manner, defendant prevented plaintiff from completing its obligations under the subcontract. Plaintiff suggests that IBM induced Crow to terminate its subcontract with plaintiff in order to avoid paying plaintiff for extra and changed work. In counts I–VI, plaintiff seeks recovery under several contract law theories and in count VII requests enforcement of a mechanic's lien on defendant's property.

Defendant has moved under Fed.R.Civ.P. 12(b)(3) to dismiss counts I–VI for improper venue. It has moved under Fed.R.Civ.P. 12(b)(6) to dismiss count VII for failure to state a claim upon which relief can be granted. Since the court has considered affidavits and other materials submitted along with the pleadings, we will treat these as motions for summary judgment under Fed.R.Civ.P. 56. For the reasons set out below, we grant defendant summary judgment.

## I. Venue

The first paragraph on the first page of plaintiff's subcontract with Crow says that the subcontractor shall be bound by all terms of the general contract between IBM and Crow.[1] Paragraph 11.4 of the general contract provides: "The parties hereby agree that the proper venue of any lawsuit arising out of this contract or in connection with the work based on a claim by the Contractor, shall be the Supreme Court of the State of New York, County of Westchester." Relying on this choice of forum clause, defendant seeks to dismiss counts I–VI for improper venue.

It is now generally accepted that a choice of forum agreement of contracting parties controls absent a strong showing that it should be set aside. Historically, courts disfavored choice of forum clauses as attempts to oust jurisdiction. See Annot., 56 A.L. R.2d 300 (1957). Courts eventually abandoned this legal fiction and resolved to enforce choice of forum clauses that appeared in international maritime agreements. See The Bremen v. Zapata Offshore Co., 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972);

---

1. Paragraph 1 of the subcontract reads:

 Subcontractor shall be bound by all the terms of the Contract [general contract between owner IBM and general contractor Crow] and assumes all the obligations of Contractor as stated therein, which are applicable to this Subcontract, including any provisions of the Contract required to be inserted or incorporated into this and other subcontracts, and all such terms, obligations and provisions of the Contract are hereby inserted and incorporated into this subcontract as fully as though copied herein. Subcontractor hereby affirms

 that he has examined all Contract Documents, and agrees that he will not plead unfamiliarity with any of said Documents in connection with any dispute which may arise hereunder or in connection with any claim for extra compensation.

 Paragraph 5.10 of the general contract requires incorporation of the venue provision into the subcontract: "All contracts in connection with the work entered into by the [general] Contractor with subcontractors and suppliers shall include the terms and conditions governing the Contractor."

*Wm. H. Muller & Co. v. Swedish American Line Ltd.,* 224 F.2d 806 (2d Cir.), *cert. denied,* 350 U.S. 903, 76 S.Ct. 182, 100 L.Ed. 793 (1955).[2] Numerous courts have extended the rationale of these admiralty cases to civil actions in contract and tort. *E.g., Hoffman v. National Equipment Rental, Ltd.,* 643 F.2d 987 (4th Cir.1981); *Furbee v. Vantage Press, Inc.,* 464 F.2d 835 (D.C.Cir. 1972); *Central Contracting Co. v. Maryland Casualty Co.,* 367 F.2d 341 (3d Cir.1966); *Hoes of America, Inc. v. Hoes,* 493 F.Supp. 1205 (C.D.Ill.1979); *Full-Sight Contact Lens Corp. v. Soft Lenses, Inc.,* 466 F.Supp. 71 (S.D.N.Y.1978); *Cruise v. Castleton, Inc.,* 449 F.Supp. 564 (S.D.N.Y.1978).

In *Bremen,* the Supreme Court set forth several factors a court should consider in determining whether to enforce a forum selection clause. Forum clauses are "prima facie valid." 407 U.S. at 10, 92 S.Ct. at 1913. Thus, a forum clause must be specifically enforced unless the party resisting its application can "clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Id.* at 15, 92 S.Ct. at 1916. "A contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." *Id.* The *Bremen* court also allowed that in rare cases, where the remoteness of the forum might suggest that the agreement was an adhesive one, a forum clause might be unenforceable if the chosen forum were "*seriously* inconvenient" for the trial of the action. *Id.* at 16, 92 S.Ct. at 1916 (emphasis in original).[3]

■ Plaintiff suggests that the forum selection clause in the IBM-Crow general contract should not be enforced because plaintiff did not freely consent to it. Although the first paragraph of the subcontract says that the subcontractor will be bound by the terms of the general contract, plaintiff asserts that it did not read or even see the general contract until after it signed the subcontract. Plaintiff now relies on its unfamiliarity with the general contract in an effort to characterize the subcontract as a contract of adhesion. Plaintiff, an experienced and sophisticated business entity, cannot complain of overweening bargaining power. In an affidavit attached to plaintiff's motion for a writ of attachment, plaintiff's president asserted that plaintiff is one of the fifty largest mechanical contractors in the United States and that it successfully completed the largest mechanical contract ever undertaken in its home state of New Jersey. Plaintiff therefore was surely aware of the virtual ubiquity of forum selection clauses in large construction contracts. If plaintiff had felt a need for an unfettered choice of forum for any possible litigation, it defies reason to believe that plaintiff would not have specifically raised the subject in negotiating a nine million dollar subcontract. We conclude, therefore, that the clause is not invalid by reason of overreaching.

The chosen forum—Westchester County, New York—is an eminently convenient locus for trial of this action. Plaintiff is based in New Brunswick, New Jersey and no longer has a location in Vermont. Defendant has its headquarters in Westchester County. Crow has its offices in New York City. Most potential witnesses apparently reside in the New York area. Plaintiff does not mention any inconveniences that might result from a trial in New York.

---

**2.** "The *Muller* case was overruled in *Indussa Corp. v. S.S. Ranborg,* 377 F.2d 200 (CA2 1967), insofar as it held that the forum clause was not inconsistent with the "lessening of liability" provision of the Carriage of Goods by Sea Act, 46 U.S.C. § 1303(8), which was applicable to the transactions in *Muller* [and] *Indussa* .... That Act is not applicable in this case." *The Bremen,* 407 U.S. at 10, 92 S.Ct. at 1913.

**3.** We need not consider whether in this diversity case we must apply the Vermont rule or the federal rule. Although the Vermont Supreme Court has not had occasion to rule on the validity of choice of forum clauses, we are confident that it would adopt the widely recognized *Bremen* doctrine.

As in *Bremen,* selection of the forum appears to be a reasonable effort to create a heightened degree of certainty in litigation and to provide a neutral forum experienced and capable in the resolution of a specialized ilk of litigation. There is no reason to believe that the law of New York would contravene any strong public policy of Vermont.

Considering all of the policy considerations in *Bremen* and its progeny, enforcement of the choice of forum provision appears just and reasonable.

Plaintiff, however, asserts that the terms of the general contract—including the choice of forum provision—are not incorporated in the subcontract because plaintiff qualified its acceptance, expressly excepting to paragraph 1 of the subcontract. Its basis for this assertion is a cover letter dated February 25, 1980, that it sent to Crow along with the executed subcontract. The letter reads in pertinent part: "We are enclosing herewith copies of our Subcontract . . . properly executed as requested subject to the following clarifications: . . . Please forward a copy of your contract with the owner so that we can review the terms and conditions which you want us to assume." By a letter dated March 4, 1980, Crow said that it would comply with this request. Plaintiff maintains that Crow did not provide plaintiff with a copy of the general contract until February, 1981, after Crow terminated the subcontract. Plaintiff concludes that until it received the contract, it was, in accordance with plaintiff's express agreement with Crow, not bound by the general contract's terms.

 A cover letter, as other extrinsic writings, may constitute a part of the agreement of parties to a contract. *Brown v. Financial Service Corp., International,* 489 F.2d 144, 149 (5th Cir.1974); *Gateway Co., Inc. v. Charlotte Theatres, Inc.,* 297 F.2d 483, 486 (1st Cir.1961). *See Newton v.*

*Smith Motors, Inc.,* 122 Vt. 409, 412, 175 A.2d 514 (1961). Since the cover letter in some respects attempts to modify the signed subcontract that it accompanied, the subcontract is not a complete integration of the parties' understanding. Consideration of the cover letter does not, therefore, violate the parol evidence rule because the cover letter is part of the contract.

 This said, it remains to determine the significance of plaintiff's request for a copy of the general contract. Plaintiff denominated its request a "clarification." It did not in terms make receipt of the general contract a condition of its agreement to be bound by the general contract. Furthermore, plaintiff did not attempt to delete the language in the subcontract indicating that the subcontractor had examined the general contract and agreed not to plead unfamiliarity with any of its provisions.[4] Where language in an agreement is clear, the intention and understanding of the parties must be taken to be that which the agreement declares. *Lamoille Grain Co., Inc. v. St. Johnsbury & Lamoille County Railroad,* 135 Vt. 5, 8, 369 A.2d 1389 (1976). Bearing in mind plaintiff's sophistication in contract negotiations and adequate bargaining power, and considering the contract as a whole, we conclude that plaintiff's subcontract with Crow incorporated the choice of forum clause of the general contract between Crow and IBM.[5]

## II. Mechanic's Lien

In count VII of its complaint, plaintiff seeks to enforce a lien on defendant's property pursuant to Vt.Stat.Ann. tit. 9, § 1924 (1970). Defendant moves for dismissal of Count VII on the ground that by written contract plaintiff waived its right to assert the lien. Plaintiff levels three attacks on the waiver, all unavailing.

---

**4.** *See* note 1, *supra.*

**5.** In granting defendant summary judgment on counts I–VI, we do not express or imply any opinion with respect to the merits of the controversy which presumably will be resolved in

the appropriate forum specified in the contract. Because we are confident that the chosen forum is fair and convenient, we see no need to stay these proceedings. *Cf., Hoes of America, Inc. v. Hoes,* 493 F.Supp. 1205 (C.D.Ill.1979).

By the terms of its subcontract with the general contractor Crow, plaintiff explicitly waived any rights to liens on the defendant's property.[6] Plaintiff, however, seeks to expunge this waiver by asserting that Crow materially breached the subcontract thereby discharging plaintiff's obligation to observe its promises under the subcontract. Although the Vermont Supreme Court has not faced the question, courts in several jurisdictions have specifically addressed the issue plaintiff raises and determined that a party that has breached a contract can nonetheless invoke a contractual lien waiver. *Beacon Construction Co., Inc. v. Matco Electric Co., Inc.,* 521 F.2d 392 (2d Cir.1975) (applying New York law); *Bushman Construction Co. v. Air Force Academy Housing, Inc.,* 327 F.2d 481 (10th Cir.1964) (applying Colorado law); *Charles Simkin & Sons, Inc. v. Massiah,* 289 F.2d 26 (3d Cir.1961) (applying New Jersey law); *Formigli Corp. v. Fox,* 348 F.Supp. 629 (E.D.Pa.1972) (applying Pennsylvania law). Surely, in waiving its statutory right to a lien on defendant's property, plaintiff contemplated a contractual breach by defendant, Crow, or both; were there no breach, the lien likely would never come into play. By waiving its lien plaintiff acknowledged that if it was injured by a breach of contract, it could assert no lien on defendant's property but must instead rely on defendant's general credit. *See Massiah,* 289 F.2d at 27–28. Thus the validity of the waiver is unaffected by IBM's and Crow's alleged breaches of contract.

Secondly, plaintiff asserts that the contractual waiver does not extend to extra work not specified in the contract. The comprehensive language of the waiver dispels this notion. Moreover, it is the law in Vermont that where extras are closely connected with contract work, they are considered a part of the contract for determining coverage of a lien. *Baldwin v. Spear Brothers,* 79 Vt. 43, 51–52, 64 A. 235 (1906).

Finally, plaintiff asserts that because the waiver appears in the contract between plaintiff and Crow, defendant is not entitled to enforce it. Since IBM was clearly the intended beneficiary of the waiver, we conclude that IBM may enforce the clause. *See* Restatement (Second) of Contracts § 133.

Because we conclude that plaintiff has waived his statutory liens, we need not consider defendant's argument that any lien has lapsed.

For the reasons discussed above, we grant defendant summary judgment on all counts of plaintiff's complaint.

---

**6.** Paragraph 14 on page 4 of the subcontract between plaintiff and Crow reads:

Subcontractor, for itself and for all persons furnishing labor, materials or services in connection with the Work, waives and releases all mechanic's liens or right of liens or claims, now existing or hereafter arising for labor or materials furnished under this Subcontract, upon the Project or Project premises or upon any monies due or to become due the Contractor.